UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

TELINA S. FULLER,       )
         )
    Plaintiff,       )
         )
v.         )     No. 3:25-CV-550-TAV-JEM
         )
HONORABLE HECTOR SANCHEZ,   )
CALEB SMOTHERS, and KNOX    )
COUNTY, TENNESSEE,     )
         )
    Defendants.    )

## ORDER AND REPORT AND RECOMMENDATION

This case is before the Court pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs ("Application") [Doc. 2], Complaint [Doc. 1], and her Amended Complaint [Doc. 12], and Plaintiff's Second Application to Proceed in District Court Without Prepaying Fees or Costs ("Amended Application") [Doc. 17]. For the reasons more fully stated below, the undersigned **GRANTS** Plaintiff's Application [**Doc. 2**] but **RECOMMENDS** that the District Judge **DISMISS** the Complaint and the Amended Complaint [**Docs. 1 and 12**].[1]

---

[1]    Generally, when a plaintiff files an amended complaint, it supersedes the original complaint. *See Fla. Dep't of State v. Treasure Salvors, Inc.*, 458 U.S. 670, 702 (1982) ("[O]nce accepted, an amended complaint replaces the original."). But here, Plaintiff's Amended Complaint does not restate her original claims; rather, it adds new claims and parties. In light of Plaintiff's pro se status, the Court therefore has screened both pleadings.

## I.  DETERMINATION ABOUT THE FILING FEE

Plaintiff has filed an Application [Doc. 2] with the required detailing of her financial condition. Section 1915 allows a litigant to commence a civil or criminal action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992). The Court's review of an application to proceed without paying the administrative costs of the lawsuit is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that "the filing of a complaint is conditioned solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). To proceed without paying the administrative costs, the plaintiff must show by affidavit the inability to pay court fees and costs—it is a threshold requirement. 28 U.S.C. § 1915(a)(1). One need not be absolutely destitute, however, to enjoy the benefit of proceeding in the manner of a pauper, or in forma pauperis. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit to proceed without paying the administrative costs is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id*. at 339.

The Court finds the Application is sufficient to demonstrate that Plaintiff is not currently employed and has zero assets. Considering Plaintiff's Application, it appears to the Court that her economic status is such that she cannot afford to pay for the costs of litigation and still pay for the necessities of life. The Court will allow Plaintiff to proceed in the manner of a pauper. The Court **DIRECTS** the Clerk to file the Complaint in this case without payment of costs or fees. The Clerk **SHALL NOT**, however, issue process at this time.

## II.      RECOMMENDATION AFTER SCREENING OF THE COMPLAINT

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen complaints and shall, at any time, sua sponte dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. 28 U.S.C. §§ 1915(e)(2); *Benson v. O'Brian*, 179 F.3d 1014, 1015–16 (6th Cir. 1999).[2] Courts also have a continuing duty to ensure that jurisdiction exists to hear the case. *Answers in Genesis, Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009) ("[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." (citations omitted)). To survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts liberally construe pro se pleadings filed in civil rights cases and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

### A.      Summary of the Complaint

Plaintiff names three Defendants in her Complaint: (1) the Honorable Hector Sanchez, a judge of the Knox County Criminal Court, in his official capacity ("Defendant Sanchez"); (2) Caleb Smothers, an Assistant District Attorney for Knox County, in his individual capacity ("Defendant Smothers"); and (3) Knox County, Tennessee as "a political subdivision of the State of Tennessee" [Doc. 1 p. 2].

---

[2]      Despite the reference to prisoners, 28 U.S.C. § 1915 requires the Court to screen complaints filed by non-prisoners seeking in forma pauperis status. *McGore v. Wrigglesworth*, 114 F. 3d 601, 608 (6th Cir. 1997) ("Unlike prisoner cases, complaints by non-prisoners are not subject to screening process required by § 1915A. However, the district court must still screen the complaint under § 1915(e)(2)."), *overruled on other grounds by Jones v. Brock*, 549 U.S. 199 (2007).

Plaintiff contends that "Defendants have engaged in a coordinated campaign of retaliatory prosecution and judicial misconduct designed to punish Plaintiff for: [e]xposing government corruption through protected speech[,] [f]iling federal civil rights litigation[,] [and] [p]resenting objective scientific evidence disproving the state's case [*Id.* at 1].

Plaintiff states that she is "the defendant in State of Tennessee v. Fuller, Case No. 131192, a first-offense misdemeanor DUI charge that has been weaponized through judicial misconduct" [*Id.* at 2]. Plaintiff explains that "[o]n October 30, 2025, Defendant Sanchez entered a Mental Health Evaluation Order" that she alleges was based on "protected Facebook speech discussing government corruption[;] [h]earsay testimony from a surprise witness presented without notice[;] [z]ero medical evidence of incompetence[;] [and] Plaintiff's vigorous exercise of constitutional rights in self-representation" [*Id.*]. Plaintiff argues that the competency order "contains extraordinary and punitive provisions," including a custody directive that "the sheriff . . . directed to transport or escort the defendant," as well as "conditional" detention language which states "if the defendant is released from custody," and an "automatic stay of all motion practice, including pending constitutional challenges" [*Id.*]. Plaintiff alleges that "[t]his order was issued immediately after Plaintiff presented objective scientific evidence providing the state's criminal case, medically impossible, demonstrating retaliatory motive" [*Id.*].

Plaintiff submits that "[t]he State, through Defendant Smothers, has systematically withheld exculpatory evidence," including body camera footage from March 6, 2024, hospital surveillance video, exculpatory medical records, and EMS surveillance footage [*Id.*]. Plaintiff argues that "Defendants have engaged in a pattern of constitutional violations," which include an eighteen-month delay "in bringing a simple misdemeanor to trial," "illegal contempt order and 12-day-over-detention," "oppressive pretrial conditions (IID device)," and "systematic avoidance

4

of numerous constitutional motions" [*Id.*]. Plaintiff maintains that the competency order "creates an unconstitutional procedural catch-22 by blocking Plaintiff's recusal motion challenging the same order's validity" [*Id.*].

Plaintiff contends that "[t]he competency order and related proceedings punish Plaintiff for protected speech about government corruption, violating the First Amendment" [*Id.*]. Plaintiff also argues that "[t]he void competency order, issued without medical evidence and based on hearsay, violates Plaintiff's Fourteenth Amendment due process rights" and that the "custody provisions of the competency order constitute an imminent threat of unlawful seizure under the Fourth Amendment" [*Id.*]. She submits that she has "been treated differently than similarly situated defendants through unusual procedures including grand jury indictment for a misdemeanor and oppressive pretrial conditions" and that these "constitutional violations occurred pursuant to Knox County's customs, policies, or practices of deliberate indifference to constitutional rights" [*Id.*].

While there are "pending state criminal proceedings," Plaintiff maintains that the retaliatory prosecution claim is properly before the Court because she is challenging "the unconstitutional motive behind the prosecution, not its ultimate outcome" and that "[t]he First Amendment violations are complete upon the retaliatory act, regardless of case disposition" [*Id.* at 4].

Plaintiff alleges that "[o]n November 4, 2025, Plaintiff was illegally evicted from her residence in Madison County, North Carolina through coordinated law enforcement action" [Doc. 12 p. 2]. Plaintiff contends that "[t]he North Carolina proceedings mirror the procedural sabotage occurring in Tennessee, including systematic use of incorrect addresses and denial of meaningful access to judicial processes" [*Id.*]. Plaintiff submits that there is a historical pattern of evidence suppression and institutional corruption, and that beginning in 2023, "Knox County law

enforcement systematically suppressed evidence of crimes against Plaintiff, including burglary, bank fraud, and home invasion" [*Id.*]. Plaintiff notes that "Detective Lee Strzelecki closed investigations as 'unfounded' based on suspect statements rather than physical evidence. Documentation reveals financial connections between KCSO employees, John Edward Fuller Jr., and the vehicle involved in the March 6, 2024 incident" [*Id.*].

Plaintiff states that she "submitted a formal public records request to the Tennessee Department of Safety and Homeland Security pursuant to the Tennessee Public Records Act, T.C.A. § 10-7-503, seeking body camera and dash camera footage from THP Officer Edgar Amaro Carrion," but that she was denied and that this denial "demonstrates coordinated evidence suppression against state agencies" [*Id.*]. Plaintiff argues that "[c]orrespondence from Helen Ross McNabb Center demonstrates an ongoing conspiracy to fabricate false mental health evidence" [*Id.*].

Plaintiff alleges violations of 42 U.S.C. § 1983 [Doc. 1 p. 1]. She claims that Defendants violated the First, Fourth, and Fourteenth Amendments [*Id.*]. Plaintiff asks for declaratory relief, immediate injunctive relief, permanent injunctive relief, and monetary relief [*Id.* at 4–5]. Specifically, Plaintiff asks that the Court "[i]ssue a temporary restraining order and preliminary injunction" that enjoins "all state court competency proceedings in State v. Fuller, Case No. 131192, prohibit[s] any custody, detention, or transportation of Plaintiff for mental health evaluation, stay[s] the automatic stay provision that blocks Plaintiff's constitutional challenges, [and] enjoin[s] Defendants from using the void competency order in any proceedings" [*Id.* at 4]. For permanent injunctive relief, Plaintiff requests that the Court issue a permanent injunction "[d]eclaring the competency order void and unenforceable, [p]rohibiting further retaliatory prosecution based on protected speech, [r]equiring immediate disclosure of all withheld

exculpatory evidence, [and] [e]njoining further harassment through abusive legal processes" [*Id.*].

For declaratory relief, Plaintiff asks that the Court "[i]ssue a declaratory judgment that the competency order violates Plaintiff's First, Fourth, and Fourteenth Amendment rights; [d]eclare that the prosecution constitutes retaliatory prosecution in bad faith, [and] [d]eclare that Defendants' systematic evidence suppression violates Brady v. Maryland and due process" [*Id.*].

In Plaintiff's Amended Complaint, Plaintiff further requests that the Court "[r]emove [Defendant] Hector Sanchez from all proceedings," as well as bar Defendant Caleb Smothers "from any further participation in the investigation or prosecution" [Doc. 12 p. 3]. Plaintiff requests compensatory damages against Defendant Caleb Smothers for severe emotional distress and mental anguish, financial losses, and damage to reputation and standing in the community [*Id.*]. Plaintiff also seeks punitive damages against Defendant Caleb Smothers in his individual capacity "for his willful, malicious, and reckless disregard for Plaintiff's constitutional rights" [*Id.*].

## B.      Screening of the Complaint and Amended Complaint

Section 1983 allows a plaintiff to seek redress from state actors for "the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; *see also Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To state a claim under § 1983, a plaintiff must allege (1) a deprivation of rights secured by the "Constitution and laws" of the United States and (2) that a defendant caused harm while acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S.144, 150 (1970).

Defendant Sanchez is a judge for the Knox County Criminal Court. Plaintiff is suing Defendant Sanchez in his official capacity and seeking declaratory relief and injunctive relief. A suit against Defendant Sanchez in his official capacity as a state judge is a suit against the State of Tennessee. *Doe #1-9 v. Lee*, 809 F. Supp. 3d 768, 780 (M.D. Tenn. 2025) ("[A] suit against a state

official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." (alteration in original) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)). Eleventh Amendment immunity "bars all suits, whether for injunctive, declaratory, or monetary relief" against a state and its agencies. *McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) (quotation omitted). The amendment also precludes lawsuits against state employees who are sued in their official capacities. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). It does not, however, foreclose § 1983 actions seeking "prospective relief to end a continuing violation of federal law." *Carten v. Kent State Univ.*, 282 F.3d 391, 395 (6th Cir. 2002) (noting that the Supreme Court announced an exception to Eleventh Amendment immunity for claims requesting injunctive relief against individual state officials in *Ex parte Young*, 209 U.S. 123 (1908)). Section 1983 states, however, "[I]n any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or a declaratory relief was unavailable." 42 U.S.C. § 1983; *see also Wright v. Finley*, No. 1:19-CV-819, 2021 WL 680243, at *4 (S.D. Ohio Feb. 22, 2021) ("Thus, the statute generally prohibits suits for injunctive relief against judicial officers but provides exceptions for declaratory decrees or the unavailability of declaratory relief."). But Plaintiff does not allege that Defendant Sanchez violated a declaratory judgment or that declaratory relief was unavailable to her. *Cooper v. Rapp*, 702 F. App'x 328, 334 (6th Cir. 2017) ("The district court correctly noted that [the plaintiffs] failed to allege that Judge Rapp violated a declaratory judgment. Nor did they demonstrate that declaratory relief was 'unavailable[.]'"); *see also El v. Ecorse Police Dep't*, No. CV 22-12089, 2022 WL 19829545, at *1 (E.D. Mich. Oct. 7, 2022) (sua sponte dismissing the plaintiff's claims against the state court judge, explaining that "the 1996 amendments to

8

§ 1983 extended absolute immunity for state judges to requests for injunctive or equitable relief" (citations omitted)).

Plaintiff also names Defendant Smothers in his individual capacity. But the allegations against Defendant Smothers stem from his role as an assistant district attorney [*See* Doc. 1 p. 2]. Defendant Smothers is immune from suit. *Joy v. Burchyett*, No. 121CV01190, 2022 WL 3652670, at *3 (W.D. Tenn. Aug. 24, 2022) ("[P]rosecutorial immunity from suit is absolute." (citations omitted)); *Carpenter Jenkins v. Scotta*, No. 17-11781, 2019 WL 5680344, at *8 (E.D. Mich. Aug. 20, 2019) ("Based on plaintiff's allegation, the first type of claim arises out of [the state prosecutor's] representations to the court. . . . Thus, prosecutorial immunity applies."), *report and recommendation adopted*, No. 2:17-CV-11781, 2019 WL 4686474 (E.D. Mich. Sept. 26, 2019). "So long as the prosecutor was engaged in prosecutorial functions, he or she is absolutely immune regardless of whether he or she undertook actions maliciously, in bad faith, or with an improper motive." *St. Thomas v. Ohio*, No. 4:23 CV 2007, 2024 WL 404491, at *4 (N.D. Ohio Feb. 2, 2024) (citing *Imbler v. Pachtman*, 424 U.S. 409, 427 n.27, 431 n.34 (1976) (prosecutor immune after knowingly presenting perjured testimony and suppressing exculpatory evidence at trial); *Joseph v. Patterson*, 795 F.2d 549, 555 (6th Cir. 1986) (prosecutor immune after "knowingly obtaining issuance of criminal complaints and arrest warrants . . . based on false, coerced statements"); *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989) (prosecutor immune for deciding to investigate and conspiring to present false charges to the grand jury, allegedly to satisfy a campaign promise to be tough on child abuse)). Plaintiff claims that Defendant Smothers has "systematically withheld exculpatory evidence" and delayed in bringing her "simple misdemeanor to trial" [Doc. 1 p. 2]. These are allegations related to Defendant Smothers's conduct as a prosecutor. *See Koubriti v. Convertino*, 593 F.3d 459, 467

9

(6th Cir. 2010) (noting that prosecutorial functions included participation in probable cause hearings, grand jury hearings, pretrial proceedings, witness preparation, and trial).

Plaintiff names Knox County as a Defendant and alleges that "constitutional violations occurred pursuant to Knox County's customs, policies, or practices of deliberate indifference to constitutional rights" [Doc. 1 p. 3]. A municipality may liable under § 1983 only where its custom or policy caused a violation of the plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Yet, Plaintiff does not assert with the required specificity that Knox County's customs and policies violated her constitutional rights as is required to assert a *Monell* claim under § 1983. *Iqbal*, 556 U.S. at 681; *Baker v. Columbus*, No. 2:25-CV-1052, 2025 WL 3250912, at *4 (S.D. Ohio Nov. 21, 2025) (holding that where the plaintiff "offer[ed] only . . . bare legal conclusions" but no facts to support *Monell* liability, the complaint was subject to dismissal at screening (omission in original)); *Assi v. Hanshaw*, 625 F. Supp. 3d 722, 750 (S.D. Ohio 2022) (holding that where the plaintiff's complaint "mixe[d] and matche[d] terminology associated with *Monell* claims—'ratif[ication]'; 'failure to adequately train and/or supervise;' and the implementation of 'customs and policies . . . that, on their face, violate the Fourteenth Amendment" but did not provide any "concrete factual allegations" to support the claims, the complaint was subject to dismissal at screening).

### C.    Amending the Complaint

The undersigned has considered whether to allow Plaintiff to amend her pleadings. Plaintiff has amended once and based upon a review of the allegations, justice does not require further amendment.

10

## II. CONCLUSION

For the reasons explained above, the undersigned **GRANTS** Plaintiff's Application to Proceed in District Court Without Prepaying Fees or Costs [**Doc. 2, 17**] [3] but **RECOMMENDS**[4] that the District Judge **DISMISS** Plaintiff's Complaint [**Doc. 1**] and Amended Complaint [**Doc. 12**] with prejudice.

Respectfully,

Jill E. McCook
United States Magistrate Judge

---

[3] This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Tchrs.*, 829 F.2d 1370, 1373 (6th Cir. 1987).